Thank you. May it please the Court. I am Jeffrey Ehrlich for the Hellerviks, who are appealing the dismissal of their case without leaf to amend. We've identified what we think are two reversible errors committed by the district court. The first was dismissing the Hellervik's first amended complaint under Rule 12b-6 because it was supposedly not sufficiently specific under Rule 8a-2. And the second error was that even if there were deficiencies in the complaint, in not giving the Hellervik's leaf to amend to cure those deficiencies and then dismissing the entire case with prejudice. Now, in my view, it seems that the second issue, the first issue is sort of a sufficient condition for reversal, but the second issue is necessary. We can debate whether the complaint was sufficient, but when we get down to whether leaf to amend should be granted, I don't think there's much room for debate, and that's what I intended to focus on, although I'm happy to defend the complaint if the Court wanted me to. So the focus of my argument is that it was an abuse of discretion to not grant leaf to amend the complaint, given the deficiency that the Court identified. In Eminence Capital v. Aspion, which is cited in the briefs 316f3rd at 1048, this Court said that if a court is a district court's deciding whether or not to grant leaf to amend, it should consider four factors, whether amendment would be futile, whether allowing the amendment would unduly prejudice any party, whether there have been repeated failures to cure deficiencies with prior amendments, and whether there's been undue delay, bad faith, or a dilatory motive. The court didn't make any, district court didn't make any findings on any of these issues. It just dismissed the only, the closest that the order came was saying that the Hellebrets had had two chances, and that's not really accurate. They had filed a complaint in the original complaint in State court. Some of the, if you look at the docket, some of the defendants answered it. How does it affect our decision that there was a Second Amendment complaint attached to it, so the district court, when he made that decision, was able to look at the Second, proposed, you know, Second Amendment complaint, and does that not give us, or should we give more latitude to the district court's decision to deny in light of that because he's looking at the Second Amendment complaint? I'm, I acknowledge that the language that he used in failing to, to allow the Second Amendment complaint does not comport, but I'm just curious, what do we do with that Second Amendment complaint? Murphy, from, from my standpoint, I think that it actually adds more weight to my argument, which is, I think the record is clear that, that Judge Klausner didn't look at that complaint. He didn't evaluate it, didn't say it was insufficient. He basically said it was just too late, and I, I think that if, if the, if Judge Klausner had sort of made an order that said, you've proposed these amendments and you still haven't done it, that would be a different case than saying, I'm not going to look at it because it comes too late. I already dismissed the complaint once. I, I think you're about to talk. Well, I just, go ahead. Well, what I was going to say, if you look at the sweep of what happened here, you've got the original order dismissing in, in March, and, and Judge Klausner identifies two distinct problems that he sees with the, with the, the First Amendment complaint, I'm, I'm sorry, with the original complaint, that it didn't state which products produced by Phelps Dodge or the other defendants contained asbestos, and that it covered a 40-year span without containing information about the type of products that Phelps Dodge or the other defendants produced or how Mr. Hellerich was exposed to them. Those were the defects that were identified in March. So now, now you've got the First Amendment complaint. Now, that complaint doesn't belong in a form book as an exemplar of how to plead a case, but if you are trying to measure it against the defects that were identified in the March order, I think it, it answers those. It's clearly a bona fide attempt to answer those questions. The, the June order granting the second motion to dismiss actually applies a different standard. Suddenly, the June order is saying that the defects relate to, based on the Lineweaver case, the way that plaintiffs have to allege causation, not, not allege causation. I'm sorry, I misspoke. Lineweaver is not a pleading case. Lineweaver is a case about what is the quantum of proof necessary at trial to prove an asbestos case. And, and the order of dismissal talks about the duration of exposure and, and, and these things, which are not really pleading elements under any, any rule that I'm familiar with under rule in Federal court and not under State court. Asbestos cases don't have to be pleaded that way. If you, if you look at the Bockrath case, which is what the defendants rely on, which was cited in the, in the, the March dismissal order, the California Supreme Court says that all the elements of causation can be pleaded in a conclusory way. So I don't think, we sort of have a moving target here. When whatever we, again, I'm not going to defend extensively the First Amendment and a complaint, but I can at least say it was clearly an attempt to meet the defects that Judge Klausner identified. And if the problem with it was that it wasn't specific enough, then the response to that is then give me more details. And if Judge Klausner really believed that under the Lineweaver case that these elements of causation suddenly had to be proven or at least identified in the complaint, well, then that was a new, a new issue. It wasn't in the first order. It's not like the plaintiffs ignored that directive. And there should have been a Second Amendment complaint allowed. And so when you look at the Second Amendment complaint that was filed in response to the order to show cause, I think that complaint probably is not Rule 8 compliant. I've seen cases, this Court, saying that a 70-plus page complaint, you know, is too long because it's not, it's prolix. But if the district court is saying, I want these details, I want these details, I think that the plaintiffs in the Second Amendment complaint made a good faith attempt to try to give them. There's no finding of any of the factors saying that there was delay, no finding of prejudice, no finding of bad faith. I just don't see how under this Court's precedence, under Bells v. Reed, a failure to make those findings is essentially, shows there's an abuse of discretion. This, you can't throw the whole case out when, if the problem is a lack of specificity. There wasn't a finding here that this is, this product's liability complaint was somehow inherently defective and no claim could be stated. I just think this is an abuse of discretion, and there should have been leave to amend. And with that, I sit down. Roberts, I think you always do. Good morning, Your Honor. James Mink for Apelli Phelps Dodge Industries. And I will go directly to the leave to amend issue subject to questions from the Court, if it has them. The description of the court, of the district court's first order on Phelps Dodge's first motion to dismiss, in the briefing on appeal and in oral argument, somewhat glosses over the Court's citation to the Bockrath case in California, which, in which the district court here pointed to two requirements. One, identifying an asbestos-containing product. And two, identifying how the plaintiff was exposed to it. How the plaintiff is exposed is an essential part of showing that there was substantial factor causation. The Bockrath case gets cited in the first order, and I believe the Bockrath case is also cited in the second order, along with the Linea Weaver case, which, as counsel pointed out, relates to trial issues. But, obviously, things that need to be proven at trial have to be represented in some form in the initial pleading. Some form. Okay. So can we look at the allegations in the second amended complaint that addressed those issues? I think that ---- Could you do that, please? Oh, could I take a look at those? Yes. Yes. Absolutely. Could you explain why the proposed language is insufficient? I think there are a few problems. It's lengthy. It certainly is lengthy. It identifies wire and cable. It does identify wire and cable, which the first amended complaint also did. What it essentially does to achieve its length is pastes the boilerplate language of the first amended complaint into separate paragraphs for each defendant and then recites the substantial factor standard. In addition, it contains a description of the defendant's conduct that relates to all of the defendants in one aggregation with a laundry list of alternative things that they may have done, something that we raised in our briefing on the motion to dismiss the first amended complaint that plaintiffs below did not respond to and then retained in their second amended complaint. If the Court was to consider it. Well, what ---- can you go through the allegations and explain why they don't give you sufficient notice as to your product and the ---- So the difficulty with it is that it's the same laundry list of allegations. That's not answering my question. I'm looking at the second amended complaint. Okay. So what's missing on the identification of product and how it was exposed and over what period of time, at least sufficient to make a plausible claim that Feltz-Dodge wire and cable products were a substantial factor in his lung cancer? I think that there comes a point at which when there is a long enough list of ---- What's missing, counsel, you're giving me general argument. I'd like to look at the language. Do you have the second amendment complaint? I'm looking at it, and I'm trying to find out, because the district court didn't explain what was missing. I'm asking you to explain. I'm looking at the supplemental excerpt of record. I'm sorry. That's not the citation that I want. The problem with it is that it fails to identify what Feltz-Dodge, as a defendant, did or failed to do that is any different from any of the other defendants. So if you look at the second amended complaint, paragraph 9, which is essentially identical to the first amended complaint at paragraph 9, or the second amended complaint, paragraph 14 versus the first at 13, and then the third example of that is second amended complaint. What should it have alleged? What could it have alleged that would have made the difference here? Well, this is they're pleading facts as to an electrician. We manufacture wire and cable. There are defendants in here who do things as diverse as manufacturing wall board, brakes, that sort of thing. Allegations saying that Feltz-Dodge did or failed to do researching, labeling, packaging, a long list and or are not sufficient to put us on notice of what we specifically did. It's not a plausible interpretation, we don't believe, of either the first amended complaint or the second amended complaint that plaintiffs are suggesting that Feltz-Dodge did all of these things, especially because they're alleged in a group as against the defendants. We cited cases in our briefing in the court below against the first amended complaint on this issue. Plaintiffs chose not to address that, either in response to our second motion to dismiss or in their briefing on appeal. And if I could just say that's not the case. May it please the Court, Todd Dacker for Appellee DAP, Inc., good morning. I would love to answer your question, and I think that what we need to do when we're stepping back and looking at the question is decide what we need in a complaint in Federal court. And what we're talking about is the Toombley-Iqbal standard, and the Toombley-Iqbal standard requires the Federal courts require you to go beyond notice pleading. We're familiar with that, counsel. Yes, Your Honor. Once you get to the point. And moving on, I'd also like to identify a couple of Ninth Circuit cases that have come out since the briefing, the first being NRA Century Aluminum Company securities litigation, the 704-Fed-3-1119. Did that just come out yesterday? That came out in 2013. The other one came out last year. I don't understand why you didn't submit a 28-J letter. I don't want to get too far out of this, but why didn't you submit that before today? To be honest, Your Honor, I wasn't aware of it until I shepherdized the cases yesterday. Okay. The other one came out last month, which is Eclectic Props East LLC v. Marcus. Have you given notice to the other side that you're going to cite these cases? I have not given notice, Your Honor. Like I said we haven't done anything to comply with our rules. Unfortunately, I was unable to, Your Honor, because I just stumbled upon them last night. Yeah. Well, you could have prepared this case for a lot longer than that. I understand, Your Honor. And unfortunately, there was no shepherdization that had been done on the case between the submission of our beliefs and the preparation for oral argument, which I admit is my bad, and I apologize to the Court for that. But I'd just like to bring to the Court's attention that those cases exist. But you know, because we don't have the cases, counsel doesn't have the cases. You said you would like to answer my question. Yes, Your Honor. I assumed you were going to go to the Second Amendment complaint and explain what's defective. Yes. The defective is then Tumblee-Iqbal, and the reason I cited those other cases is because they cite Tumblee-Iqbal and interpret them and explain them for the Ninth Circuit. But if you just go straight to Tumblee-Iqbal, it says that you have to have a plausible cause of action. We know that, counsel. It has to be a plausible. I said that already. And the definition, the definition of plausibility, Your Honor, is that you can't have, and this is why I need to kind of go down the path, the definition of plausibility is if there's facts, if the facts that are complained of can also support an innocuous alternative explanation, then that's not a plausible cause of action. And that's what we've got here. If you look through the Second Amendment complaint, the Second Amendment complaint is exactly the same allegations against almost every single defendant. It doesn't decide – it has every single defendant from 1954 to the 1980s. It has every single defendant at every single job site at which Mr. Hellerbeck worked. It has every single defendant having their product manipulated in every possible way that any product can possibly be manipulated. If you go back and you look through the Second Amendment complaint, which I did, those central paragraphs are cut and pasted from defendant to defendant. The only real difference between the defendants is the paragraph at the beginning identifying what products are at issue and the paragraph at the end identifying which – whether the defendant has admitted any of its products contained as best. Everything you said goes back to then to the First Amendment complaint, and so why was that deficient? I mean, tell us what it should have had. What was missing here? The first – what the First Amendment complaint is missing – Well, the first or second, according to you. Exactly. What it is missing, Your Honor, is specific allegations regarding specific use, the specific use of the specific products for the specific defendants. And that's exactly – and if the Toombley-Iqbal standard is applicable to any litigation, it's applicable to asbestos litigation. Why is it more applicable to asbestos litigation? Historically, the information related to the exposures, the products, and so forth has been in the hands of the defense. And the best the plaintiff can do is to identify the areas of exposure, the time periods, and the manner, and that frames the basis for discovery to which you could, as DAP, look at whether or not you supply these products from 1954 to 1958 on the and help defend your claim. You know where you're targeted in that period, as well as anything else that's related. So it sounds like what you really are saying is that this is not going to win on summary judgment. They're not going to win on trial. But I don't see how you could not focus where your potential exposure is and where you would direct your efforts to meet the plaintiff's allegations. Well, I have to respectfully disagree with you, Judge Battaglia, on the fact that the defendants have the evidence, because in asbestos litigation, the defendants never have the evidence. All of the evidence comes from the plaintiff or plaintiff's coworkers, because that is the evidence that you get regarding exposure. DAP doesn't know exactly where its products were and to do that. Really? They don't know where they sold products. They don't know if the distribution changed through their distributors. It went to the Navy or the shipyard civilian contractors doing the work. DAP doesn't keep those sorts of records, Your Honor. I mean, sales records from the 1960s or 1970s, those aren't records that they have. And even if they did, under California asbestos litigation law, that's not sufficient to establish liability. If you look at Bockrath, if you look at Lina Weaver and the other cases in California asbestos litigation law, what you find is that simply having a product at a job site where a plaintiff is working is not sufficient to establish liability. You have to have specific allegations that you're – that the plaintiff not only worked with or around your product, but that the product was asbestos-containing, and that they worked with or around the product in a way that would release friable asbestos fibers that would rise to a substantial factor in the causation of their disease. And that's what you're going to have to prove that. But I'm looking at page 17 of the complaint relative to DAP, and it says, Well, I think one of the things that the courts talk about is how the richness of the factual pleading necessary in any complaint is dependent on the facts of the particular case or the situation of the particular case. And here what we have is we have in asbestos litigation, you have a case that's  you have 40 or 50 defendants. You have many, many different products that are alleged to be at use. And essentially what you have is plaintiff giving you a cut-and-paste allegation of what happened to every single defendant, that every single exposure to every single defendant happened the exact same way. If you look at the DAP exposure, you do have allegations of use of DAP aboard ship, use of a caulk aboard ship. You have exact you have allegations that the DAP product was sod, that a caulk was sod. I mean, a lot of this is just completely outlandish just from a common common-sense perspective. And when you step back and you look at the complaint in toto, what you find is you find not a particularized allegation against each defendant, which is what Judge Klosner was looking for. It's just a cut-and-paste. The reason it's 88 pages long is because the same four paragraphs is cut-and-pasted against every defendant. There's no specific ---- Kennedy, was there asbestos in your product? There were asbestos in some DAP products up until 1976, not all DAP products. And were they sold to the Navy? DAP, as far as I know, DAP never sold products to the Navy. But once again, we have ---- Any of the work locations that are in the complaint? DAP has no record of having any sales to any locations during that time period. We just don't have sales records. Is it natured that it would be cut or that the asbestos ---- if it was something that had asbestos in it, and if it were cut, it could become friable? No. In fact, DAP's caulking was designed to be used in a way that never ---- would never create an asbestos. It's a caulk, so you seal it on with your finger. I mean, we're getting a little far afield here, Your Honor, but you put it on with your finger, and that ---- then you're done, essentially. So there's really not very many ways to be exposed to asbestos, even if the DAP caulk did have asbestos. And we have experts who will tell you that it was designed so that even if it was broken up, it would just come off in chunks. I don't know if you have any experience with caulking, but it would just come off in chunks rather than having dust fly into the air. But that's the whole point we have here, Your Honor, is we don't have any specific ---- specificity in the allegations. That's what Judge Klosner was looking for. That's what Toombley and Iqbal demand, and the reason ---- Kennedy, how would this plaintiff know that it was your product in the work site? Well, the same way that they do, because essentially what happens in these litigations is plaintiffs use defendants' deposition testimony as kind of an intake interview. And a lot of times there are 10 or 15 defendants who there are no evidence, no evidence. I asked how would they know. They would say, oh, well, I saw that word DAP on this particular thing, and I have to, when I take these depositions, go through a laundry list of brand names, under California law at least, and say, do all ---- did you work with this type of DAP product? Did you work with that type of DAP product? Which takes about 20 minutes to ask, but that is what I have to do. I am all ---- all the information comes from the plaintiff in this situation. The plaintiff is the one who knows whether he was exposed. He's the one who knows what products he used. He's the one ---- DAP has no information. Kennedy, did you get that information from him? I take his deposition, Your Honor. I thought that was Judge Battaglia's point. Well, I think the difference is between ---- because Appellant's counsel talked about California pleading standards as opposed to Federal pleading standards. And I'd say in California, you're absolutely correct. There's a notice pleading standard. But in the Federal courts, the Supreme Court is very concerned about this interim increase in settlement value by bringing defendants who have really nothing to do with the case into the case with a very broad complaint, much like this one, that's not really specific by defendant. And that's why asbestos litigation is so applicable here, because you have 40 defendants and not a whole lot of specificity in complaint. My time is up. Thank you, Your Honor. Thank you. Counsel. To address Judge Fischer's question, if you look on Volume 2 of the Excerpts of Record, page 73, it has the discussion of Phelps-Dodges, what they made and how the helpers were exposed to it. So it says it was wire cable, that the plaintiff was exposed to dust in the asbestos insulation and the defendant's cable and wire during the normal maintenance repair and cleanup, as well as the removal and installation of the wire materials. And it goes on and explains how he was exposed, when he was exposed, where he was exposed. There's nothing wrong with that allegation. At least from a Rule 8 pleading standpoint, there just isn't. And the biggest objection I heard from the other side is, well, the allegations are too similar to each other. It's a product liability case involving asbestos. A lot of different products, they were generally used in similar ways. The exposure happens in similar ways during the plaintiff's work life history. I just don't think that it is a fair reading of the pleading standards to say that somehow in federal court, there's a standard for products liability cases involving asbestos against manufacturers who admittedly made asbestos products that is somehow even more rigorous than Rule 9 for pleading fraud. It's just that isn't the law. And there was no discussion in the argument at all about why leave to amend shouldn't have been granted. And I think this case has to go back. Thank you very much. Thank you very much. Thank you all for your arguments here today. We appreciate them. The matter is now submitted. I think that concludes our docket for this morning. And the week. And the week, yes. We'll be in recess. Thank you.
judges: Battaglia, FISHER, MURGUIA